UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
JEANNETT PROANO,

       Plaintiff,                      **MEMORANDUM AND ORDER**
                                           12-CV-4184 (FB)

  -against-

CAROLYN W. COLVIN,
*Acting Commissioner of Social Security*,

       Defendant.
--------------------------------------------------------x

*Appearances*
| *For the Plaintiff:* | *For the Defendant:* |
|---|---|
| CHARLES E. BINDER, ESQ. | LORETTA E. LYNCH, ESQ. |
| Law Offices of Harry J. Binder and Charles E. Binder, P.C. | United States Attorney |
| | KATRINA M. LEDERER, ESQ. |
| 60 East 42nd Street, Suite 520 | Assistant United States Attorney |
| New York, New York 10165 | 271 Cadman Plaza East, 7th Floor |
| | Brooklyn, New York 11201 |

**BLOCK, Senior District Judge:**

        Jeannett Proano ("Proano") seeks review of a final decision issued by the Commissioner of Social Security ("Commissioner"). Although the Commissioner granted Proano's application for Disability Insurance Benefits ("DIB") as of June 3, 2009, Proano argues that she should have been found disabled as of August 1, 2005.

        Both Proano and the Commissioner move for judgment on the pleadings. While the Commissioner asks the Court to uphold the existing onset date, Proano seeks remand for recalculation of benefits given the adjusted date, or alternatively, remand for a new hearing to determine an earlier onset date. For the reasons stated below, the

1

Commissioner's motion is denied and Proano's motion is granted insofar as the Court remands the case for further proceedings. The Court declines Proano's request to remand solely for recalculation of benefits because further evidentiary proceedings are necessary, both for the ALJ to employ the services of a medical advisor and to consider the new evidence. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980).

## I

On June 22, 2009, Proano filed an application for DIB, alleging disability beginning on August 1, 2005, due to depression, Hodgkin's disease, and non-Hodgkin's lymphoma. A disability examiner approved her claim on October 15, 2009, with an established onset date of June 3, 2009. Proano challenged the onset date, and, at a hearing held on July 29, 2010, she appeared before an administrative law judge ("ALJ"). The ALJ found her "not disabled" from August 1, 2005 through June 2, 2009. The Appeals Council denied Proano's request for review, rendering the ALJ's decision the final act of the Commissioner.

Proano timely sought judicial review. The relevant evidence proffered at the hearing before the ALJ is summarized below.

**A. Medical Evidence at the ALJ Hearing**

*1. Pre-2009 Evidence*

At the psychiatric division of Bellevue Hospital Center ("Bellevue Clinic") on December 2 and 9, 2005, Dr. Melanie Schwartz diagnosed Proano with depression not

otherwise specified ("NOS"), assessed a Global Assessment of Functioning ("GAF") of 55-60, and prescribed Remeron for sleep. The catalysts for Proano's depression included her lymphoma, undergoing chemotherapy, and marital problems. Six months later at Bellevue, Dr. Neeta Jain confirmed the same and diagnosed her with Major Depressive Disorder, secondary to her lymphoma. Dr. Jain recommended Wellbutrin, a support group, and couples therapy.

In the months that followed, Proano's behavior was remarkably inconsistent. Proano attended some group therapy sessions, yet missed others. She attended some medical appointments, yet cancelled others. Her reasons for her sporadic attendance varied: chemotherapy treatments, vacations to Ecuador, or other scheduling conflicts. Her sentiments about the effectiveness of her treatments were also inconsistent. One day she expressed ambivalence about continuing group therapy and stated that she benefitted from treatment sessions, while another day she stated that she no longer wished to continue psychopharmacological intervention. Her compliance with prescribed medication was likewise sporadic. She reported that her medication, Wellbutrin, was helpful; yet despite its effectiveness, she would frequently allow it to run out. In November 2008, she opted for an increase of that medication, but in April 2009, she reported that she had discontinued taking it several months earlier.

Her medical diagnosis, however, was consistent. Every doctor at Bellevue Clinic over the four-year period at issue diagnosed her with the same mental impairment, Major Depressive Disorder, albeit with slight variations. As noted, Dr. Schwartz first

diagnosed Proano in December 2005 with depression NOS. Screening physician Dr. Neeta Jain confirmed the same, diagnosing her with Major Depressive Disorder, secondary to her lymphoma. In addition, Dr. Lowell Anderson saw her at the Bellevue outpatient clinic and diagnosed her with "Major Depressive Disorder, single episode, moderate" in May 2007. AR at 647. At Bellevue psychiatric clinic in July 2007, screening clinician Clara Angel, M.A., noted Proano was depressed, tearful, and angry. In October 2007 and January 2008, Clara Angel diagnosed her with Major Depressive Disorder, noting a high GAF of 61. In April 2009, attending physician Dr. Susan Urban also diagnosed Proano with Major Depressive Disorder, characterizing it as recurrent but moderate.

### 2. *Post-2009 Evidence*

Treating physician Dr. Ludmila Davidov began treating Proano on June 3, 2009, the onset date established by the Commissioner. During her treatment relationship with Proano, Dr. Davidov reported conclusions consistent with those of state psychological consultant Yakov Burstein; namely, that Proano had marked limitations in remembering locations and work-like procedures, mantaining attention and concentration for extended periods, performing activities within a schedule, working in coordination with others, completing a normal workweek without interruption, accepting instructions and responding to criticism, as well as understanding, remembering, and carrying out detailed instructions. Dr. Davidov diagnosed Major Depressive Disorder, consistent with prior medical examiners. Moreover, Proano's assessed GAF at this time was 50, with a highest

4

GAF in the prior year of 55. In other words, Proano had not significantly worsened—or improved—at the time Dr. Davidov examined her.

**B. The ALJ's Decision**

In a decision dated October 21, 2010, the ALJ concluded that "the claimant was not under a disability within the meaning of the Social Security Act from August 1, 2005, through June 2, 2009 with the finding of disability as of June 3, 2009 not disturbed." AR at 16. In other words, despite the same symptoms plaguing Proano during that time period, the ALJ chose to find that she suddenly became depressed and incapable of sustaining work on the day she began treatment with Dr. Davidov, but no earlier. The ALJ concluded that Proano's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but did not find her credible as to the intensity, persistence and limiting effects of her symptoms.

The ALJ found that, despite her consistent battle with depression, severe impairments of follicular cancer with peripheral neuropathy, and degenerative disk disease of the cervical spine, Proano retained the residual functional capacity ("RFC") to perform medium exertional work with some mental restrictions during the disputed period. The ALJ explained that Proano was "limited to understanding, remembering, and carrying out simple instructions, making simple decisions, and dealing with changes only in a routine work setting." AR at 19. Based upon this RFC determination, and relying on the Medical Vocational Guidelines as a framework, the ALJ found that Proano was "not disabled"

5

through June 2, 2009.  AR at 24-25.

**C. New Evidence**

Subsequent to the ALJ's decision, Proano submitted to the Appeals Council a report from Dr. Davidov.  In that report, Dr. Davidov retrospectively addressed Proano's mental condition prior to the date she began treating her.  Dr. Davidov opined: "Mrs. Proano suffered, and has been suffering, from Major Depressive Disorder and chronic bereavement for several years. She was and has been unable to perform such a job [as her past sales or clerical job] at least since August 2005, when she was diagnosed with lymphoma."  AR at 903.  Dr. Davidov further noted that "despite [Proano's] medications regimen, she remained treatment resistant, and has not reached a level of functionality where she would be able to resume her duties."  AR at 903.

**II**

Proano contends that four errors warrant remand for recalculation of benefits, or alternatively, remand for further proceedings to determine an earlier onset date.  First, Proano takes issue with the ALJ's determination that her onset date was June 3, 2009, since she began experiencing symptoms as early as August 1, 2005.  Second, she contends that the Appeals Council erred by denying her request to review the ALJ's decision, particularly in light of new and material evidence.  Third, she takes issue with the ALJ's credibility determination. Finally, she contends that the ALJ inappropriately relied upon the Medical-Vocational Guidelines.

6

**III**

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In determining whether substantial evidence supported the agency's findings, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

**A. Proano's Onset Date**

Social Security Ruling 83–20 governs the determination of a claimant's onset date—namely, the date on which a claimant becomes unable to perform any substantial gainful activity. SSR 83–20, 1983 WL 31249, at *1. Unless the evidence directly establishes an onset date, the ALJ must determine one through inference. *Id.* at *2-3. "In some cases, it may be possible . . . to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working." *Id.* at *3. In determining an onset date for claimants with disabilities of non-traumatic origin, the ALJ should consider "the applicant's allegations, work history, if any, and the medical and other evidence concerning

impairment severity." *Id.* at *2. Moreover, in those cases, SSR 83–20 compels the ALJ "to employ a medical advisor to assist in determining the onset date." *Id. (*noting that a progressive impairment may become disabling before it reaches listing severity). *See also Walton v. Halter,* 243 F.3d 703, 709–10 (3d Cir. 2001); *Felicie v. Apfel,* 1998 WL 171460, at *4 (S.D.N.Y. Apr. 13, 1998) (same). The date alleged by the claimant, if consistent with all the evidence available, should serve as the established onset date. SSR 83–20, 1983 WL 31249, at *3.

Importantly, "an ALJ may not rely on the first date of diagnosis as the onset date simply because an earlier diagnosis date is unavailable." *McCall v. Astrue,* 2008 WL 537812, at *18 (S.D.N.Y. Dec. 28, 2008); *Lichter v. Bowen*, 814 F.2d 430, 434-36 (7th Cir. 1987). Equally arbitrary onset dates include "the date on which the claimant applied for SSI benefits, received a consultative examination, or appeared before an ALJ at an administrative hearing." *See, e.g., Bell v. Sec'y of Health & Human Servs.,* 732 F.2d 308, 311 (2d Cir. 1984). Moreover, in cases involving disabilities of a degenerative nature, an ALJ commits error by assuming that the claimant "suddenly became schizophrenic [or otherwise mentally disabled] on the day of her hearing, absent some evidence to support such a view." *Bell*, 732 F.2d at 311.

The ALJ's less-than-convincing rationale for the evidence he considered does not amount to compliance with the procedures and guidelines established by SSR 83–20. Simply put, because the regulations charge the ALJ with the affirmative duty to develop the record, the ALJ failed to discharge that duty when he inferred Proano's onset date

8

without employing a medical advisor to assist him. SSR 83–20, 1983 WL 31249, at *1. The ALJ maintains he conducted "a thorough review of the record, including Bellevue Hospital treatment reports, assessments/reports of . . . the claimant's treating gastroenterologist, post-established onset date assessments/narrative report by Dr. Davidov . . . and a State agency psychiatric medical consultant assessment, as well as the claimant's hearing testimony." AR at 21. Nevertheless, the ALJ's selected onset date is unsupported by substantial evidence.

Moreover, in light of the nature of Proano's disability, "if plaintiff was disabled as of [her] first visit to [Dr. Davidov], it is at least reasonable to conclude that [the] disability began earlier." *Moses v. Sullivan*, 1993 WL 26766, at *4 (S.D.N.Y. Jan. 19, 1993). The ALJ conceded, but then apparently disregarded, that Bellevue Hospital treatment reports, from as early as December 2005, confirm Proano experienced symptoms, including "depressed mood, decreased, appetite, fatigue, [and] tearfulness," at which time she was diagnosed with Major Depressive Disorder. AR at 22. The ALJ then assigned little weight to this evidence of symptomatology, seemingly because, "[the] claimant failed to show for her follow-up appointment and eventually discontinued the evaluation until after her chemotherapy." AR at 22.

The record does reveal that Proano frequently traveled to visit her family, sporadically missed appointments, and periodically refused medication dosages. *See, e.g.,* AR at 368, 377, 413, 414-16, 421, 423. These inconsistent and unstable behaviors, however, do not undermine Proano's claim of a degenerative mental disability—instead, they

9

substantiate it. *Thompson v. Apfel*, 1998 WL 720676, at *6 (S.D.N.Y. Oct. 9, 1998) (An individual "who suffers from psychological and emotional difficulties may lack the rationality to decide whether to continue treatment or medication."). It is precisely this grey area—namely, whether her disability caused these inconsistencies, or whether these inconsistencies are the very evidence of her lacking disability—that is the underlying rationale for the regulation's requirement that an ALJ employ a medical advisor's assistance in determining onset dates for degenerative disability cases. SSR 83–20, 1983 WL 31249, at *1.

Additionally, the ALJ noted Proano's employment history, but failed to explain specific reasons for crediting or discrediting it. In 2005, Proano discontinued working after her diagnosis of lymphoma. She returned to work for a one-month period in 2008, but was terminated after found crying. In determining substantial gainful activity, the ALJ must consider how well a claimant has performed in her employment. 20 C.F.R. § 416.973(b). "If [claimant] do[es] [her] work satisfactorily, this may show that [she is] working at the substantial gainful activity level. If [she is] unable, because of [her] impairments, to do ordinary or simple tasks satisfactorily without more supervision or assistance than is usually given other people doing similar work, this may show that [she is] not working at the substantial gainful activity level." 20 C.F.R. § 416.973(b). Courts have recognized that "employment is not proof positive of ability to work, since disabled people, if desperate (or employed by an altruist), can often hold a job." *Wilder v. Apfel,* 153 F.3d 799, 801 (7th Cir. 1998); *see also Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005).

10

The ALJ's findings provide persuasive evidence that Proano was terminated from her past work precisely because her disability precluded her from satisfactorily performing requirements of the job; namely, maintaining composure and a professional demeanor in the workplace. That evidence "may itself constitute evidence that the onset date of disability occurred prior to the cessation of employment." *McCall*, 2008 WL 5378121, at *17; *see also Orzel v. Finch*, 445 F.2d 150, 154 (7th Cir. 1971).

In sum, the ALJ's decision did not comport with SSR 83-20. Not only did the ALJ reject Proano's alleged onset date, but to the extent that an onset date needed to be inferred, the ALJ also failed to engage a medical advisor to assist with such a determination, or to affirmatively develop the record through additional lay testimony. At best, the ALJ provided a lengthy but ambiguous rationale for his decision to reject Proano's alleged onset date; even worse, however, the ALJ then arbitrarily selected the date of Proano's first visit with Dr. Davidov as the replacement onset date. This, too, was error. *See Telfair v. Astrue*, 2007 WL 1522616, at *8 (S.D.N.Y. May 15, 2007); *see also Felicie*, 1998 WL 171460, at *4. "While the ALJ need not have specifically referred to SSR 83–20, he was obligated to apply the analysis that it required; the failure to do so constitutes reversible error." *McCall*, 2008 WL 5378121, at *21.

Having determined that the ALJ failed to comply with SSR 83-20, the remaining issue is whether the case should be remanded for further proceedings or whether it should be remanded solely for a recalculation of benefits. Where a court concludes that an ALJ has applied an improper legal standard, or where "further findings

11

would so plainly help to assure the proper disposition of the claim," remand for further proceedings is appropriate. *Butts v. Barnhart*, 388 F.3d 377, 385-86 (2d Cir. 2004). By contrast, "where the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose," the proper remedy is remand solely for calculation of benefits. *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980). Remand for further evidentiary proceedings here, however, does serve a purpose. Because the ALJ failed to call upon a medical advisor, and because new evidence must be considered, "further findings" will "assure proper disposition of the claim." *Butts,* 388 F.3d at 385-86.

The Court acknowledges that "a remand for further evidentiary proceedings (and the possibility of further appeal) could result in substantial, additional delay." *Caroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 643 (2d Cir. 1983). However, because Proano at least began to receive benefits since June 3, 2009, and was not denied them entirely, the Court finds that the hardship to her does not weigh heavily enough in favor of remanding simply for recalculation of benefits. Accordingly, remand for further administrative proceedings is appropriate.

**B. Other Issues**

Given the Court's disposition of this case, the remaining three issues are ancillary. First, Dr. Davidov''s retrospective opinion dated September 12, 2011, now undisputedly becomes part of the record. As such, the ALJ must consider that evidence in reassessing Proano's onset date. *Tai-Fatt v. Barnhart,* 2005 WL 3206552, at *12 (S.D.N.Y.

Nov. 30, 2005) (noting that a retrospective opinion may shed light on the claimant's condition such that the agency may conclude that the claimant was entitled to benefits for this period). In the event Dr. Davidov's opinion is not sufficient, however, the ALJ must discharge his duty to further develop the record by employing another medical advisor to assist him in the determination.

Second, inclusion of this evidence in the record now, may also bolster the credibility of Proano's subjective complaints and, necessarily then, alter the ALJ's credibility determination. *Lisa v. Sec'y of Dept. Of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991).

Finally, the new evidence, similarly, may affect the ALJ's RFC assessment which, in turn, may alter whether it is appropriate to rely upon the Medical-Vocational Guidelines. *See Rosa v. Callahan,* 168 F.3d 72, 78 (2d Cir. 1999); *see also Bapp v. Bowen,* 802 F.2d 601, 605-06 (2d Cir. 1986) ("[W]here the claimant's work capacity is significantly diminished beyond that caused by his exertional impairment the application of the grids is inappropriate. By the use of the phrase 'significantly diminish,' we mean the additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.").

## IV

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is denied, and Proano's motion is granted insofar as the case is remanded to the

13

Commissioner for further administrative proceedings.


**SO ORDERED.**

/s/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
October 9, 2013